UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
DIANGELO ENRIQUEZ,

                Plaintiff,

      -v-

CITY OF NEW YORK; Former Chief Medical Examiner
CHARLES HIRSCH;  Chief Medical Examiner
BARBARA SAMPSON; DIANA HO, CHRISTOPHER
KAMNICK, and Office of the Chief Medical
Examiner ("OCME") Does 1 -2;

                Defendants.
----------------------------------------------------------------------x

**SECOND AMENDED COMPLAINT
AND DEMAND FOR A JURY TRIAL**

<u>**Index No. 17-CV-4293 (VSB**</u>)

Plaintiff Diangelo Enriquez, by his attorneys David B. Rankin, of Beldock Levine & Hoffman, LLP and Michael L. Spiegel, for his complaint, does hereby state and allege:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate Plaintiff's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983, and pendant claims through the laws of the State of New York.

2. Plaintiff Diangelo Enriquez's rights were violated when and employees of the Office of the Chief Medical Examiner ("OCME") unconstitutionally and without any legal basis seized, and arrested Plaintiff despite the absence of probable cause.  By reason of defendants' actions, including the unreasonable and unlawful seizure of his person, plaintiff was deprived of his constitutional rights.

3. Plaintiff also seeks an award of compensatory and punitive damages and attorneys' fees.

///

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States.

5. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) in that Plaintiff's claim arose in the Southern District of New York.

6. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §1988.

7. In accordance with the requirements of New York General Municipal Law § 50-e, Mr. Enriquez filed a timely Notice of Claim with the New York City Comptroller on or about May 6, 2016. Thus, this Court has supplemental jurisdiction over Mr. Enriquez' claims under New York law because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

8. Mr. Enriquez's claims have not been adjusted by the New York City Comptroller's Office.

## PARTIES

9. Plaintiff Diangelo Enriquez is, and was at all times relevant to this action, a resident of the County of New York in the State of New York.

10. Defendant the City of New York is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department and a medical examiner's office, which acts as its agent and for which it is ultimately responsible. Defendant City assumes the risks incidental to the maintenance of a police force, police officers, a chief medical examiner, and a chief medical examiner's office.

11. The New York City Office of Chief Medical Examiner ("OCME") conducts investigations using forensic science in the service of families, communities, and the criminal justice system. OCME

operates the City's DNA laboratory, which is responsible for testing physical evidence from criminal cases in the five boroughs.

12.     Former Chief Medical Examiner Charles Hirsch, M.D.; Chief Medical Examiner Barbara Sampson, M.D., Ph.D.; Diana Ho; Christopher Kamnick; and the OCME Doe 1-2, Defendants were, at all times relevant herein, officers, employees and agents of OCME, herein after ("individual defendants").

13.     Former Chief Medical Examiner Charles Hirsch, M.D.; Chief Medical Examiner Barbara Sampson, M.D., Ph.D. are sued in their official and unofficial capacity.

14.     Diana Ho; Christopher Kamnick; and the OCME Doe 1-2 are sued in their individual capacity.

15.     The true and complete names, rank, and shield number of defendants OCME Does are not currently known. However, they were employees or agents of the NYPD or OCME on the dates of the incidents. Accordingly, they may be entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Municipal Law § 50-k. The Law Department, then, is hereby put on notice (a) that Mr. Enriquez intends to name said officers as defendants in an amended pleading once their true and complete name, rank, and shield number become known and (b) that the Law Department should immediately begin preparing their defense(s) in this action.

16.     At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees of OCME, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of OCME at all times relevant herein, with the power and authority vested in them as officers, agents and employees of OCME.

17.     The individual defendants' acts hereafter complained of were carried out intentionally,

recklessly, with malice, and in gross disregard of Plaintiff's rights.

18. At all relevant times, the individual defendants were engaged in joint ventures, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

19. The individual defendants are being sued herein in their individual capacities.

## STATEMENT OF FACTS

20. Mr. Enriquez was arrested by, upon information and belief, NYPD P.O. John Does 1-3 on October 24, 2008 at approximately 11:45 pm, at the 34th Precinct located at 4295 Broadway, New York, NY 10033.

21. Upon arriving to Court for his arraignment, the Court set bail and Mr. Enriquez was confined to the custody of the City of New York.

22. He was arraigned on an indictment which charged a violation of P.L §125.25 on December 3, 2008 in relation to a murder which occurred on October 23, 2008.

23. On March 9, 2016, over seven years later, Mr. Enriquez was acquitted at trial and released from custody.

## The OCME and NYPD's Improper Reliance on LCN DNA

24. The OCME processed and tested Mr. Enriquez' DNA and DNA from the crime scene.

25. OCME employees Diana Ho, Christopher Kamnick, and Does 1 – 2 incorrectly concluded that the DNA provided physical evidence of Mr. Enriquez' involvement in the murder and forwarded the same to prosecutors.

26. Upon information and belief, NYPD P.O. John Does 1-3 relied upon the OCME DNA reports.

27. Other evidence tending to point to Mr. Enriquez's involvement in this crime was insufficient and, on information and belief and but for the DNA evidence, Mr. Enriquez would not have been

4

prosecuted for Murder for the whole duration of the prosecution.

28. OCME employees Diana Ho, Christopher Kamnick, and Doe 1 based their conclusion that Mr. Enriquez was involved in the crime on Low Copy Number (low template) ("LCN") DNA, a disfavored technique.

29. This technique is disfavored even with non-degraded DNA samples.

30. On information and belief, Chief Medical Examiner Dr. Charles Hirsch and/or Chief Medical Examiner Barbara Sampson authorized the use of LCN testing.

31. The sample used as evidence in the case against Mr. Enriquez was degraded, and this was known to Diana Ho, Christopher Kamnick, and Doe 1 at the time they tested Mr. Enriquez's DNA.

32. During the prosecution of Mr. Enriquez, OCME employees Diana Ho, Christopher Kamnick, and Doe 1, knowing that the sample was degraded, produced a "Forensic Statistic Comparison Report" (FSCR) which falsely stated the Enriquez DNA that was tested was "not degraded." Attached as Exhibit 1.

33. The FSCR reports were set to produce a field which stated the "Degraded Type:" was not degraded, as is shown in Exhibit 1. It was the policy and practice for the OCME produce FSCRs which incorrectly, at least in some cases, stated the samples were not degraded.

34. OCME's Forensic Statistical Tool (FST) program which performed the LCN tests was not properly validated for use with degraded samples of DNA. The validation studies on degraded samples that OCME conducted, in which they used lab manufactured degraded samples, had widely varied results such that FST could not be affirmatively validated for use with actual degraded samples.

35. Unless a DNA expert looked at the underlying DNA data, which is was OCMEs policy to resist producing, there would be no indication that the FST was used on degraded samples.

36. Upon information and belief, all defendants knew that they were producing reports with false

5

information regarding the status of the samples tested (e.g., that samples known to be degraded were reported to be not degraded), they knew or should have known that Low Copy Number DNA testing is generally regarded as unreliable, and they knew or should have known that their FST which was performing tests outside of the manufacturers' recommendation could not produce reliable results with degraded DNA samples.

37. The practice by OCME was the subject of the New York Times entitled "Traces of CRIME: HOW NEW YORK'S DNA TECHNIQUES BECAME TAINTED.[1]"   The article, which should be viewed as incorporated into the complaint states:

> The day of reckoning is going to come," Mr. [Barry] Scheck told his fellow commissioners, some of whom rolled their eyes, a video of the meeting showed. "Someday people are going to review this," he continued. "It's an Ebola. It is a cancer here that could be spreading. We are all on notice.

38. In 2011, the Legal Aid Society requested the software to see if FST was a robust testing mechanism.  OCME refused to provide the code.[2]  The totality of the Atlantic article is incorporated by reference.

39. On information and belief, Chief Medical Examiner Dr. Charles Hirsch and/or Chief Medical Examiner Barbara Sampson authorized or failed to prevent the use of the FST with LCN DNA.

40. On information and belief, Mr. Enriquez's case was not an anomaly. Many other prosecutions and defense attorneys have relied upon reports containing false information based on these testing errors.

41. On information and belief, the testing referenced above for Mr. Enriquez's prosecution was the standard practice of OCME the City of New York in or around 2008 to very recently.

---

[1] Lauren Kirchner, Traces of Crime: How New York's DNA Techniques Became Tainted The New York Times (2017), https://www.nytimes.com/2017/09/04/nyregion/dna-analysis-evidence-new-york-disputed-techniques.html (last visited Mar 30, 2018).
[2] Matthew Shaer, The False Promise of DNA Testing The Atlantic (2016), https://www.theatlantic.com/magazine/archive/2016/06/a-reasonable-doubt/480747/ (last visited Mar 30, 2018).

42. On information and belief, the NYPD had a policy and/or practice of accepting false reports based on this testing.

43. OCME's policy of continuing to use both FST and LCN DNA testing, knowing it was unrealiable, was at least partially due to the profits they were receiving from testing DNA for police departments around the country.

**Damages**

44. Mr. Enriquez was incarcerated for over seven years at least in part on the basis of a DNA testing practice that has been shown to be knowingly scientifically infirm.

45. While in custody, Mr. Enriquez was improperly disciplined and placed in solitary confinement for at least six months.

46. While in custody, Mr. Enriquez was improperly denied contact visits from 2013 to 2016.

47. He has continued to suffer emotionally from the effects of his incarceration.

48. As a direct and proximate result of the events described above, Plaintiff suffered and is continuing to suffer from the violation of his federal and state rights without limitation, including deprivations of his state and federal constitutional rights; physical pain and suffering; mental anguish and emotional distress; loss of reputation; embarrassment and indignity; and financial loss, including loss of income.

**FIRST CAUSE OF ACTION**

**Deprivation of Rights Under the
United States Constitution Pursuant to 42 U.S.C. §1983
(Against the Individual Defendants)**

49. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

50. By their conduct and actions in, fabricating evidence against plaintiff, abusing criminal

process, violating Plaintiff's fair trial rights, and by failing to intercede to prevent the complained of conduct, individual defendants acting under color of law and without lawful justification, intentionally, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of Plaintiff's constitutional rights as guaranteed through 42 U.S.C. § 1983 and the United States Constitution, including its Fourth, Fifth, Sixth and Fourteenth Amendments.

51. As a result of the foregoing, Plaintiff was deprived of liberty, suffered emotional distress, physical injury, humiliation, loss of property, costs and expenses, and was otherwise damaged and injured.

## SECOND CAUSE OF ACTION

**42 U.S.C. § 1983**
**Violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments**
**(Against the City of New York)**

52. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

53. At all times material to this complaint, Defendant the City of New York had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

54. These policies and practices included the improper use of FST, FSCRs, and Low Copy Number DNA testing.

55. At all times material to this complaint, Defendant the City of New York failed to properly train, screen, supervise, or discipline its employees, including the individual defendants, and failed to inform the individual defendant's supervisors of their need to train, screen, supervise or discipline Defendants Diana Ho, Christopher Kamnick, and Does 1 – 2.

56. The policies, practices, customs, and usages, and the failure to properly train, screen, supervise, or discipline, were a direct and proximate cause of the unconstitutional conduct alleged herein, causing injury and damage in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth, Fifth, Sixth, and Fourteenth Amendments.

57. As a result of the foregoing, Plaintiff was deprived of liberty, suffered emotional distress, physical injury, humiliation, loss of property, costs and expenses, and was otherwise damaged and injured.

## THIRD CAUSE OF ACTION

### Violations of the New York State Constitution

58. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

59. Defendants subjected Plaintiff to the foregoing acts and omissions without due process of law, thereby depriving Plaintiff of rights, privileges, and immunities guaranteed by Article 1, § 6 and 12 of the New York State Constitution, including, without limitation, the right to due process and the right to be free from unreasonable searches and seizures.

60. As a direct and proximate result of Defendants' deprivations of Plaintiff's rights, privileges, and immunities guaranteed by the New York State Constitution, Plaintiff suffered the injuries and damages set forth above.

## FOURTH CAUSE OF ACTION

### Negligence

61. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

62. Defendants jointly and severally, negligently caused injury, pain and suffering, and damage to plaintiff. The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiff and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

63. Defendants negligently hired, screened, retained, supervised, and trained the individuals complained of. The acts and conduct of defendants were the direct and proximate cause of injury and damage to and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

## JURY DEMAND

64. Plaintiff demands a trial by jury in this action on each and every one of his damage claims.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

    a. That he be compensated for violation of his constitutional rights, loss of liberty, emotional distress, physical injury, humiliation, loss of property, costs and expenses, and other damage and injury;

    b. That he be awarded punitive damages against the individual defendants;

    c. That he be compensated for attorneys' fees and the costs and disbursements of this action; and

    d. For such other further and different relief as to the Court may seem just and proper.

Dated:    January 31, 2019
             New York, New York

                            Respectfully submitted,

                            /s
                By:_____
                     David B. Rankin
                     Beldock Levine & Hoffman LLP
                     99 Park Avenue PH/26th Fl.
                     New York, New York 10016-1601
                     t: 212-490-0400

e: DRankin@blhny.com


By: _____/s/_____
Michael L. Spiegel, Esq.
11 Park Place, Suite 914
New York, New York 10007
t: 212-587-8558
e: mikespiegel@aol.com

*Attorneys for the Plaintiff*